*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0304P (6th Cir.)
File Name: 04a0304p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

JERROLD S. PRESSMAN,
 *Plaintiff-Appellant,*

 *v.*

FRANKLIN NATIONAL BANK
and GORDON E. INMAN,
 *Defendants-Appellees.*

No. 03-5592

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 00-00799—Todd J. Campbell, District Judge.

Argued: August 10, 2004

Decided and Filed: September 9, 2004

Before: KEITH, MARTIN, and ROGERS, Circuit Judges.

———————

## COUNSEL

**ARGUED:** Jeffrey Alan Greene, Nashville, Tennessee, for Appellant. Joseph A. Woodruff, WALLER, LANSDEN, DORTCH & DAVIS, Nashville, Tennessee, for Appellees. **ON BRIEF:** Jeffrey Alan Greene, Nashville, Tennessee, for Appellant. Joseph A. Woodruff, W. Travis Parham,

WALLER, LANSDEN, DORTCH & DAVIS, Nashville, Tennessee, for Appellees.

———————

## OPINION

———————

BOYCE F. MARTIN, JR., Circuit Judge. This dispute arises from Franklin National Bank's failure to make a loan to a partnership called Inglehame Farm, LP, of which Jerrold S. Pressman was a limited partner. Pressman alleges that the Bank is liable for breach of contract, fraud and civil conspiracy, and that Gordon E. Inman – the founder of the Bank and president of the Bank's parent company – is liable for procurement of breach of contract and civil conspiracy. Following a nine-day bench trial, the district court entered judgment in favor of the defendants on all claims. For the reasons discussed below, we AFFIRM.

### I.

The Inglehame Farm partnership was formed to accomplish one purpose: to purchase from different sellers several tracts of land in Williamson County, Tennessee, combine the tracts and develop them as a residential subdivision. The closing on one of the parcels of land, labeled the "Sharp property," was originally scheduled for August 1, 1996. The partnership sought to rezone the property prior to the closing. Robert Geringer, one of the general partners of the partnership, spoke with Charles Lanier, a loan officer at the Bank, about obtaining an acquisition loan for the Sharp property. The partnership had conducted business with the Bank on prior occasions. Lanier told Geringer that the Bank would need to obtain a participating bank to finance a portion of the loan because the size of the loan would exceed the Bank's legal lending limit.

When the rezoning hearing was set for a date that followed the scheduled closing date, the partnership asked the sellers for an extension of the closing date, which was refused. Lanier subsequently told Geringer that the loan had been approved by the Bank's loan committee. Still, however, the Bank needed to obtain a participating bank in order to provide the loan. The Bank first asked its parent company, Franklin Financial Corporation, to participate in the loan, but Franklin Financial refused. The Bank then approached The Banker's Bank of Atlanta, Georgia, which gave more consideration to the proposal. Shortly before the scheduled closing, Lanier told Geringer that Banker's Bank required approval of the rezoning prior to participating in the loan. Geringer testified that Lanier told him that this was the only impediment to Banker's Bank agreeing to participate, but Lanier and the Bank denied that Lanier made such a representation. The district court did not make a factual finding as to whether Lanier represented that the rezoning approval was the only impediment to Banker's Bank participating in the loan.

Geringer later met with Inman, the founder of the Bank and the president of its parent company, who offered to make a personal loan to the partnership on certain terms, including the payment of $15,000 per lot profit. Geringer rejected the offer because, in his view, the terms were extremely unfavorable to the partnership.

Geringer then negotiated an extension of the closing date on the Sharp property to August 15, at an additional, non-refundable cost of $100,000. Geringer and the Bank negotiated and executed a Commitment Letter, which was dated July 31, 1996. The Letter, which expresses the Bank's intent to make the loan to the partnership subject to certain terms and conditions, forms the basis for Pressman's breach of contract claim. Pursuant to the Commitment Letter, the Bank's obligation to make the loan to the partnership was contingent on its ability to find a participating bank to fund a portion of the loan.

The rezoning plan for the Sharp property was officially approved on August 12. Nevertheless, Banker's Bank decided not to participate in the loan to the partnership, and it notified the Bank of its decision. Lanier, in turn, advised Geringer that the Bank would not make the loan, but he mentioned that Inman was still willing to make a private loan. Steve Morriss, another general partner of the partnership, urged the partnership to accept Inman's proposal. Geringer again rejected the offer, however, and subsequently obtained a loan elsewhere, though on less favorable terms than originally proposed by the Bank.

The partnership suffered from in-fighting for the next two years, and eventually filed for bankruptcy. Pressman made an offer to purchase all of the partnership's claims as part of the bankruptcy proceeding, which was approved by the bankruptcy judge over Morriss's competing offer. Pressman filed the instant lawsuit against the Bank and Inman. After a nine-day bench trial, the district court issued a written memorandum and order entering judgment in favor of the defendants on all claims.

## II.

On appeal from a judgment entered following a bench trial, we review the district court's factual findings for clear error and its legal conclusions de novo. *Harrison v. Monumental Life Ins. Co.*, 333 F.3d 717, 721-22 (6th Cir. 2003).

### A. *Breach of Contract Claim Against the Bank*

Pressman's breach of contract claim is premised upon two theories: first, that the Bank breached its obligations under the Commitment Letter by failing to make the loan to the partnership; and second, that the Bank breached its obligation of good faith and fair dealing in connection with its search for a participating bank. We will address each theory in turn.

### 1.  *Participating Bank Condition*

The district court rejected Pressman's claim that the Bank breached its obligations under the Commitment Letter on the ground that one of the conditions in the Letter – the so-called "participating bank condition" – was not fulfilled.  That condition, which is listed under the heading "Special Conditions for Loan," provides as follows:

> (c)  *Participant.*  Lender shall obtain a participating lender that will commit to fund an aggregate of at least $2,000,000 of the Loan on a pro-rata participation basis and on other terms and conditions acceptable to both lenders.  *Should Lender be unable to locate an acceptable participant lender or to agree on the terms of the participation, then Lender shall refund the Borrower's Commitment Fee (or any portion thereof that has been paid to Lender), and Lender shall have no obligation to make the Loan, and this Commitment Letter shall be null and void . . . .*

(Emphasis added).

The district court found that as of the date set for closing, the Bank had been unable to locate a participating bank.  For this reason, the district court held that "the Bank's obligation to make the loan was excused" because the participating bank condition in the Commitment Letter had not been satisfied.

Pressman argues that the district court's conclusion was erroneous because the Bank "waived" the participating bank condition.  Under Tennessee law, a party may waive his or her known rights under a contract by either express declarations or by acts manifesting an intent not to claim the rights. *Jenkins Subway, Inc. v. Jones*, 990 S.W.2d 713, 722-23 (Tenn. Ct. App. Nov. 18, 1998).  According to Pressman, the Bank's waiver occurred even before the Commitment Letter was executed, when Lanier orally represented to the partnership that the participating bank was ready to close,

subject only to final rezoning approval. Pressman's argument lacks merit.

First, even if Lanier had the authority to effect such a waiver on behalf of the Bank, there is no evidence that he possessed the requisite "intent" to do so.  Second, Lanier's alleged representation predated the execution of the Commitment Letter; in other words, at the time of Lanier's alleged representation, the Bank had no rights under the participating bank condition that could be waived.  Third, a merger and integration clause contained in the Commitment Letter precludes Pressman from relying upon alleged representations made prior to the execution of the Commitment Letter.  That clause provides:

> This Commitment Letter when accepted by Borrower constitutes the sole and entire agreement between Lender and Borrower regarding Lender's commitment to lend money to Borrower *and all previous negotiations, letters, proposals, understandings and other communications are superseded by this Commitment Letter.*

(Emphasis added.)  Fourth, the Commitment Letter requires any "waiver of [its] terms" to be "in writing" and "executed by both parties," which was not done here.

Pressman also makes a promissory estoppel argument on appeal.   According to Pressman, Lanier's alleged representation to the partnership that Banker's Bank would accept the loan proposal so long as the rezoning plan was approved constituted a "promise on the part of the Bank to make the loan if the final [rezoning] approval was granted," upon which the partnership relied in paying $100,000 to extend the closing date.  Therefore, Pressman contends, the Bank's promise to pay the loan should be enforced to avoid injustice under the doctrine of promissory estoppel.  Our review of the record reveals that Pressman did not raise this issue in the district court, and the district court's opinion does not discuss it.  "Issues not presented to the district court but

raised for the first time on appeal are not properly before the court." *Wyckoff & Assocs. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1488 (6th Cir. 1991). For this reason, we decline to address Pressman's promissory estoppel argument.

## *2. Good Faith and Fair Dealing*

Pressman also argues that the Bank breached its obligation of good faith and fair dealing in seeking a participating bank by failing to solicit more banks and failing to submit adequate proposal materials to the banks. The district court held that it was enough for the Bank to solicit only two banks to participate, particularly given the Bank's small size and the short time until the closing date. The court also rejected Pressman's argument concerning the adequacy of the proposal materials, citing testimony from officers of Banker's Bank indicating that their decision not to participate had nothing to do with anything that the defendant Bank did or failed to do, and was based solely on the fact that the terms of the proposal were not sufficiently favorable to Banker's Bank. We agree with the district court's reasoning and find no error in its conclusion that the Bank acted in good faith and used commercially reasonable efforts to secure a participating bank.

We also reject Pressman's argument that the district court used the wrong legal standard by focusing on whether the Bank acted in bad faith, rather than on whether it failed to act in good faith. This argument elevates semantics over substance. The district court cited and applied the proper legal standard – which, as the district court recognized, is set forth in cases such as *Wallace v. National Bank of Commerce*, 938 S.W.2d 684, 686 (Tenn. 1996) and *Spectra Plastics, Inc. v. Nashoba Bank*, 15 S.W.3d 832, 843 (Tenn. Ct. App. 1999). The fact that its opinion also mentioned the phrase "bad faith" is simply of no consequence.

## B. *Exclusion of Evidence of Alleged Corruption Within the Bank*

At the bench trial, Pressman sought to admit affidavits from Ken Kiel, a former officer of the Bank, and E.A. Gregory, a Bank customer, in an attempt to show corruption within the Bank. Kiel's affidavit stated that while employed at the Bank, he had been instructed by his superior to decline a customer's transaction because Mr. Inman wished to do the deal individually. Relatedly, Gregory's affidavit indicated that Inman had provided private loans to him that involved high rates of interest coupled with payments in cash of additional amounts. This evidence was apparently offered in connection with the breach of contract claim, as evidence that the Bank breached its obligation of good faith and fair dealing. The district court characterized this evidence as "classic propensity evidence" and excluded it pursuant to Federal Rules of Evidence 404(b) and 403.

We review the district court's exclusion of evidence for abuse of discretion, and reverse only if we are "firmly convinced" of a mistake that affects "substantial rights" and amounts to more than harmless error. *United States v. Copeland*, 321 F.3d 582, 599 (6th Cir. 2003). Rule 404(b) states as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

A three-part test is used to determine whether evidence is admissible pursuant to Rule 404(b):

> *First,* the district court must decide whether there is sufficient evidence that the other act in question actually

occurred. *Second,* if so, the district court must decide whether the evidence of the other act is probative of a material issue other than character. *Third,* if the evidence is probative of a material issue other than character, the district court must decide whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect.

*United States v. Trujillo*, No. 02-1521, 2004 WL 1630518, at *8 (6th Cir. July 22, 2004) (citations omitted).

Pressman argues that "the excluded evidence showed that Mr. Inman had the power and opportunity to cause officers of the Bank to make business decisions based on his personal interests and that the motivation of the Bank and Mr. Inman in these matters was to advance Mr. Inman's personal interests, not to engage in normal banking practices." According to Pressman, these allegations are relevant to whether the Bank breached its obligation of good faith and fair dealing. The events to which Kiel and Gregory testified, however, are wholly unrelated to the facts of this case. Therefore, the probative value of the excluded testimony is extremely slight, and is outweighed by its prejudicial effect. Under these circumstances, the district court did not abuse its discretion in excluding these affidavits.

### C. *Claim of Procurement of Breach of Contract Against Inman*

Pressman argues that Inman is liable for procurement of the Bank's breach of contract. In light of our holding that the Bank committed no breach of contract, however, Inman cannot be held liable for the procurement of that alleged breach.

### D. *Civil Conspiracy Claim Against the Bank and Inman*

Pressman argues that the Bank and Inman, along with Morriss and others, conspired to defraud Pressman and the

other partners of the Inglehame Farm partnership. Pressman asserts that Morriss had been engaged in a scheme to defraud his partners from the initial formation of the partnership, and that the Bank and Inman provided financing to support the scheme, knowing that Morriss's intent was to defraud the partnership.

In Tennessee, a civil conspiracy is a "combination between two or more persons to accomplish by concert an unlawful purpose, or to accomplish a purpose not in itself unlawful by unlawful means." *Chenault v. Walker*, 36 S.W.3d 45, 52 (Tenn. 2001) (citation and quotation marks omitted). "Each conspirator must have the intent to accomplish this common purpose, and each must know of the other's intent." *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 67 (Tenn. 2001).

The district court acknowledged that there was some evidence indicating that Morriss may have been involved in a scheme to defraud the partnership, though it made no formal findings on this issue. The court reasoned, however, that even if Morriss was involved in such a scheme, the evidence did not establish that either the Bank or Inman possessed the requisite intent to be liable as civil conspirators. The relevant evidence, as recited by the district court, is as follows:

The evidence indicates that Mr. Morriss, through a company controlled by him, purchased property adjacent to the Inglehame development (the "Hollis Property") that would have been valuable to the Partnership for the access it provided to Wilson Pike, without disclosing that purchase to the Partnership. The evidence also indicates that the Bank refinanced the loan on that property.

The evidence indicates that Mr. Morriss purchased a large amount of stock in the holding company that owns the Bank; and that, at that same time, Defendant Inman was selling a substantial number of shares of stock he owned in the holding company. That stock was later

used as collateral for one of the loans Mr. Morris[s] or one of his companies received from the Bank.

Plaintiff has also established that the Bank made several loans to Mr. Morriss or to companies controlled by him on terms that were exceptionally favorable to the borrower, and "out of policy." The evidence also indicates that two of those companies to which the Bank provided loans, Pete's Landscaping and Mid-Tenn Utilities, were used by Mr. Morriss to harm the Partnership.

Finally, the evidence indicates that Mr. Morriss conducted certain of his business with the Bank through Defendant Inman, and that the two men travel[ed] to California together in 1996.

We agree with the district court that this evidence does not establish that either the Bank or Inman intended to defraud the partnership – or even that the Bank or Inman knew that Morriss intended to defraud the partnership. Therefore, the district court properly awarded judgment in favor of the Bank and Inman on Pressman's civil conspiracy claim.

For these reasons, the district court's judgment is AFFIRMED.