NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0048n.06
Filed: January 22, 2007

Case No. 05-5875

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| TRUST COMPANY OF KNOXVILLE, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| TENNESSEE VALLEY AUTHORITY, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| | ) | |

BEFORE: KEITH, BATCHELDER, Circuit Judges; ALDRICH, District Judge.[*]

ALICE M. BATCHELDER, Circuit Judge. This case arises from a quiet title action brought by the Plaintiff-Appellee, the Trust Company of Knoxville ("Trust Company"), against the Tennessee Valley Authority ("TVA") seeking a declaration that the Trust Company is the fee owner of a tract of land occupied by the TVA. Defendant-Appellant, TVA, appeals the district court's determination that the TVA's "permanent easement" to use and access a small piece of Tennessee property expired on October 26, 2002, by the terms of a 1987 permit granting that easement, and that the TVA has improperly occupied the property since that time. Because the district court erred in its construction of the documents and language at issue, we REVERSE.

_____

[*]The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

# I. BACKGROUND

In the course of a bench trial, the parties agreed that the issue for trial was "whether the United States reserved in the 1992 deed to the City a permit (or an easement) for a term of years as alleged by Plaintiff or a permanent easement as alleged by the Defendants." The parties stipulated to the following facts.

By quitclaim deed dated September 23, 1992, the United States conveyed to the City of Oak Ridge, Tennessee, a tract of 532.59 acres of federally owned land. That land had been managed by the United States Department of Energy ("DOE") and contained an area used by the TVA. The DOE and its predecessor, the Atomic Energy Commission ("AEC"), had been responsible for administering the tract since 1965, when the AEC issued a permit to TVA for the use of a portion of the land.

The 1965 permit granted to TVA access rights to an area containing approximately 9 acres and an access road serving the area, for the purpose of constructing, maintaining, and using a meteorological tower. In July 1987, TVA officials asked DOE to issue a permit to use the site covered by the 1965 permit for a microwave repeater station. TVA expressed concern that DOE might convey the permitted land to a third party, and requested that the new permit incorporate language "which would preserve TVA's rights as permanent easement rights" in the event of a future conveyance.

On October 14, 1987, DOE issued a permit granting TVA access to and use of the DOE-controlled land for the purpose of erecting and maintaining a microwave repeater station. The 1987 permit ("the Permit") stated that "this permit . . . supersedes the [1965 permit] to more accurately describe and provide for the continued access to and use by TVA of the land permitted by said

2

permit." Paragraphs 1 and 2 of the Permit set out the metes and bounds of the site for the microwave repeater station and the access road, and granted rights of access for erection, construction, maintenance and use for purposes of the microwave repeater station across the site and access road tracts. Paragraph 3 of the Permit stated: "should the tracts be sold . . . the instrument evidencing such sale will contain the reservation of permanent easements and rights in favor of the United States of America for the use, control, and benefit of TVA, as legal agent of the United States of America, to enter and to exercise all the rights hereinabove set out."

The remaining paragraphs of the Permit set out the DOE's restrictions on the use of its property, including the DOE's right to revoke the Permit if departmental requirements necessitated such revocation (Paragraph 9); the requirement that TVA seek DOE's authorization before performing restoration or repairs on the land (Paragraph 11); and the requirement that TVA conform to DOE rules and regulations in the conduct of the activities authorized by the Permit (Paragraph 15). Paragraph 10 of the Permit required that TVA vacate the property:

> Upon revocation, expiration, or surrender of this Permit, and to the extent directed by the DOE or its authorized representative, the TVA shall remove all alterations, additions, betterments, and improvements made, or installed, and restore said land tracts to the same or as good condition as existed on the date of entry under the Permit, reasonable wear and tear excepted.

A final, unnumbered paragraph stated that the Permit was effective until October 26, 2002, unless revoked or terminated earlier.

On September 23, 1992, while the Permit was in effect, the United States, acting through the DOE, sold to the City of Oak Ridge, Tennessee, a 532 acre tract of land that included the tracts described in the 1987 Permit. Consistent with Paragraph 3 of the Permit, the 1992 quitclaim deed conveying the land reserved a "permanent easement" for access to, and use of, the site for continued

3

operation and maintenance of the microwave repeater station. The deed explicitly provided that "[t]his conveyance is made subject to the following restrictions, reservations, and easements," the third of which reads:

> Real Estate Permit No. REORDOER-4-89-0801 [the 1987 Permit], granted by the Department of Energy to the Tennessee Valley Authority for construction and maintenance of a microwave repeater station and tower with access thereto. The area contained within this permit is depicted on a survey plat prepared by Tennessee Valley Authority dated November 20, 1985. Pursuant to Item 3 of said Permit, the United States of America hereby reserves a permanent easement and right for continued use, control and benefit of Tennessee Valley Authority of the rights contained within the Permit.

Thus, the conveyance was expressly "made subject to the . . . rights contained within the [1987] Permit." The TVA concedes that the other restrictions recited in the deed are unrelated to the TVA's occupancy and use of the tract conveyed.

Under the terms of the 1992 deed, the City of Oak Ridge paid the DOE $1,113,000 for the entire 532 acres of "Parcel A." Seward B. Norris then purchased various tracts of Parcel A in several increments from the City, and assigned his rights to acquire the remaining tracts of Parcel A to the Trust Company in 1999. Tract F and Tract G of Parcel A contain portions of the 9.85 acre tract occupied by the TVA, as well as the 1.15 acre access easement used by TVA pursuant to the 1987 Permit.

By quitclaim deed dated May 28, 1999, the City conveyed Tract F and Tract G to the Trust Company subject to the 1992 deed from the DOE, and acknowledged that the Trust Company paid consideration to the City in the amount of $29,351.69. The Trust Company has paid property taxes on all the acreage, including the alleged easement area used by the TVA since 1999.

4

On February 17, 2004, the Trust Company of Knoxville filed a complaint pursuant to the Quiet Title Act, 28 U.S.C. 2409a, seeking a declaration that the Trust Company was the fee owner of the site and that the Permit had expired on October 26, 2002. The Trust Company sought to eject TVA from the microwave repeater site and to recover compensation for TVA's occupancy from the Permit's 2002 expiration date forward.

On April 30, 2004, TVA moved for judgment on the pleadings. The district court denied the motion and the case proceeded to a bench trial. The issue for trial was whether the rights reserved by the deed constituted a permanent easement, as stated in the deed and in the Permit, or whether the deed reserved only a license for a term of years that expired on the date on which the Permit expired if the land had remained subject to federal administration.

The district court construed the "permanent easement" reserved in the deed as a license to use the property for a term of years, on the ground that the interests reserved were described in the Permit that had an expiration date of October 26, 2002. The court found that "the concept of a permanent easement is inconsistent with the term of years set forth in the Permit." Construing the instruments against the United States, which had drafted both, the court concluded that the deed had reserved only a license for a term of years that expired in 2002.

TVA timely appealed the district court's decision.

## II. ANALYSIS

We review the district court's finding of fact for clear error, and its conclusions of law *de novo*. *Pressman v. Franklin Nat'l Bank*, 384 F.3d 182, 185 (6th Cir. 2004).

TVA contends that the plain language of both the deed and the Permit reveals a clear intent to reserve *permanently* in the United States the rights granted to TVA by the Permit, and that the

5

district court hypothesized a conflict between the deed and the Permit and ignored the clear intent of the grantor as expressed unambiguously on the face of the deed.

The district court struggled with TVA's reading of the documents, in large part because the final paragraph of the Permit contains an express expiration date, which the court viewed as inconsistent with the language creating an allegedly permanent easement. The court focused on what it called "key language of the deed" that reads: "Pursuant to Item 3 of said Permit, the United States of America hereby reserves a permanent easement and right for continued use, control and benefit of Tennessee Valley Authority of the rights contained within the Permit." The court noted that the TVA focused on the first half of that sentence, which specifically refers to numbered Paragraph 3 of the Permit and uses the term "permanent easement," but that the sentence read in its entirety reserves for the TVA an easement "of the rights contained within the Permit." Therefore, the court said, in order to determine the scope of the rights reserved for TVA in the deed, it "must construe the Permit according to the terms of the four corners of the document." Finally, the court found that when the 1987 Permit is construed with the 1992 quitclaim deed, the concept of a permanent easement is inconsistent with the term of years set forth in the Permit. We agree that the Permit and the deed must be construed together, but having done so, we find no inconsistency between them.

It is clear that the Permit became effective in October 1987 and was to remain effective until October 26, 2002, at which time the Permit would expire along with its rights and restrictions. It is also clear that Paragraphs 9 and 10 of the Permit preserve DOE's right to "terminate" or "revoke" the Permit "in the event that DOE's requirements necessitate possession of said land tracts . . . ." The district court's error lies in its failure to recognize that Paragraph 3 of the Permit anticipates and provides for precisely the situation presented here. That is, in the event that during the life of the

6

Permit DOE should sell, transfer or convey the property, "the instrument evidencing such sale *will* contain the reservation of permanent easements and rights in favor of the United States of America for the use, control, and benefit of TVA, as legal agent of the United States of America, to enter and to exercise all the rights hereinabove." (emphasis added). The Permit, although for a term of years, clearly created a permanent easement in the event that DOE sold the property before the Permit expired.

In 1992, while the Permit was still in effect, DOE quitclaimed its interest to the City, subject to "restrictions, reservations, and easements," which expressly included Paragraph 3 of the 1987 permit "reserv[ing] a permanent easement and right for continued use, control and benefit of Tennessee Valley Authority of the rights contained within the Permit." The easement created by the quitclaim deed was therefore permanent.

## CONCLUSION

For the foregoing reasons, we **REVERSE** the judgment of the district court.