**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0691n.06

**No. 09-1391**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Nov 05, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| PAUL WATTERS, | ) | |
| | ) | |
| Plaintiff–Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| TILDEN MINING COMPANY, L.C., et al., | ) | WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendants–Appellants. | ) | |
| | ) | |

Before: DAUGHTREY, COLE, and GIBBONS, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Plaintiff–appellee Paul Watters was laid off from his position with defendant–appellant Tilden Mining Company ("Tilden") on August 30, 1981. He subsequently enlisted in the Air Force, but despite receiving a military leave of absence, Tilden terminated his employment contract during his term of service. Upon his return from the Air Force, Watters applied for reemployment in accordance with the Veteran Re-Employment Rights Act ("VRRA"), 38 U.S.C. § 4301 *et seq.*, but Tilden was unable to rehire him until July 26, 1988, and did so only as a new hire. Watters brought suit under the VRRA, claiming that he is owed seniority and pension credit for the period between his date of termination and his date of rehire. After a bench trial, the magistrate judge granted Watters's request. For the reasons discussed below, we vacate the judgment of the magistrate judge and remand with instructions to enter judgment consistent with the reasoning below.

I.

Paul Watters was first hired by Tilden on January 16, 1978. He worked for Tilden until August 30, 1981, when he was laid off. Pursuant to union rules, after being laid off, Watters continued to accrue both pension and seniority benefits, by a process known as a "creep." Watters's pension creep was to last for 2 years and his seniority creep was to last for 3 years, 7 months, and 13 days. The benefit of the creeps was that if Watters had been called back to work before the creeps expired, his pension and seniority would have accrued as though there had been no break in service.

On March 11, 1983, while still laid off, Watters requested a military leave of absence so that he could enroll in the Air Force. Tilden granted the request on March 18. At the time leave was requested, Watters still had 5 months remaining on his pension creep and 2 years and 2 days remaining on his seniority creep.[1] On April 13, 1985, while Watters was still serving in the Air Force and the day after his seniority creep expired, Tilden terminated Watters's employment. Watters continued serving in the military and was honorably discharged on April 17, 1987. One month later, on May 18, 1987, Watters applied for reemployment with Tilden. Tilden initially denied his application, but eventually rehired him on July 26, 1988. Watters has worked for Tilden ever since.

---

[1]For some reason not immediately apparent from the record, the stipulated facts and briefs of the parties seem to miscalculate some of the relevant time periods. For example, by our count of calendar days, at the time Watters was granted military leave he actually had 5 months and 20 days remaining on his pension creep and 2 years, 1 month, and 2 days remaining on his seniority creep. Nevertheless, we will use the time periods stipulated to by the parties.

In 1990, as a result of a new agreement with Watters's union, Tilden extended Watters's pension credit back to December 12, 1982. This extra credit was equal to the length of his initial employment plus 2 years and was added to the pension credit he had accrued since rejoining Tilden in 1988. His seniority credit date was moved back to match his new pension date. In 1993, Watters's pension and seniority credit dates were moved back an additional year to December 12, 1981, pursuant to that year's contract with Watters's union. His pension and security credit dates have remained the same since.

Following the 1993 recalculation, Tilden circulated a survey to its employees inquiring about their military service. Upon Watters's completion of the survey, Tilden informed him that he was not entitled to any additional seniority because it had already restored any seniority due during the recalculations. Watters filed a grievance with his union on December 2, 1993. The grievance first went through mediation, but the settlement suggested by the mediator was rejected by Tilden. The grievance was then submitted to arbitration, but the arbitrator found that the grievance was untimely and dismissed it on October 6, 1997. On September 16, 2002, Watters filed suit in Michigan state court. The court dismissed his claim on September 20, 2005, however, finding that the VRRA, 38 U.S.C. § 4323, provided exclusive jurisdiction in the federal courts for Watters's claim. Watters filed this suit in the Western District of Michigan on November 14, 2007. The parties consented to jurisdiction by the magistrate judge on March 24, 2008.

Watters claimed that Tilden had violated his rights under the VRRA by terminating his employment while he was on military leave. Watters alleged that, by terminating his employment, Tilden unlawfully caused him to have a break in service, which reduced his benefits, including

3

seniority, hourly pay, scheduling, and expected retirement date. Watters asserted that his position with Tilden and creeps should have been frozen when he was put on military leave, and the creeps should have run again only when he was discharged from military service. Therefore, by Watters's calculations, his pension creep should have run until September 17, 1987, and his seniority creep should have run until April 19, 1989. Because he was rehired before his seniority creep expired, Watters requested that the court award him seniority credit for the time between when he was terminated and his rehire date, equal to 3 years, 3 months, and 9 days. Further, he requested that the court award him an equal amount of pension credit if the court found that Tilden had recalled to work employees junior to him before he was rehired, but, in any event, pension credit equal to 2 years, 5 months, and 4 days. He requested this award on top of any time he had already been credited as a result of the 1990 and 1993 labor agreements.

After Tilden moved for summary judgment, the parties waived jury trial and agreed to submit the case on the merits based on stipulated facts. The magistrate judge found: (1) when Watters was placed on military leave of absence, his position with Tilden was frozen and he should not have been terminated; (2) Watters was re-hired before his seniority creep expired; and (3) Watters failed to show that junior employees were called back to work while he was on military leave. Therefore, the magistrate judge granted Watters an additional 3 years, 3 months, and 9 days credit to his seniority, and 2 years, 5 months, and 4 days credit to his pension.

Tilden timely appealed. On appeal, Tilden argues that because Watters was terminated in accordance with the system of seniority recall rights as delineated in the labor agreement, he is not entitled to protection under the VRRA.

4

II.

"On appeal from a judgment entered following a bench trial, we review the district court's factual findings for clear error and its legal conclusions de novo." *Pressman v. Franklin Nat'l Bank*, 384 F.3d 182, 185 (6th Cir. 2004) (citing *Harrison v. Monumental Life Ins. Co.*, 333 F.3d 717, 721–22 (6th Cir. 2003)). We cannot reverse the district court's findings of fact "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety . . . even when the district court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985).

III.

A.

Before being able to determine whether Watters is entitled to protection under the VRRA, we must determine which version of the VRRA to apply. The VRRA was originally passed in 1974, as part of the Vietnam Era Veterans' Readjustment Assistance Act of 1974, and codified at 38 U.S.C. § 2021 *et seq*. Pub. L. No. 93-508, § 404(a), 88 Stat. 1578 (1974). After passing various minor alterations, including renumbering the VRRA to its current location at 38 U.S.C. § 4301 *et seq.*, *see* Veterans' Benefits Act of 1992, Pub. L. No. 102-568, § 506(a), 106 Stat. 4320, 4340 (1992), Congress significantly amended the content of the VRRA with the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), Pub. L. No. 103-353, § 2, 108 Stat. 3149 (1994). Although the parties named the VRRA in their pleadings and briefs before this

5

court and the district court, it was this version of the current USERRA that they actually cited. The

magistrate judge also cited the current statute.

USERRA does not apply to Watters's case, however, because he reapplied for his position

before USERRA was enacted.  USERRA provides: "[T]he amendments made by this Act shall be

effective with respect to reemployments initiated on or after the first day after the 60-day period

beginning on the date of enactment of this Act [October 13, 1994]."  Pub. L. No. 103-353, § 8.

Further, the note on prior provisions to 38 U.S.C. § 4301 explains:

> Another section 4301 . . . related to reemployment rights of persons inducted into the
> Armed Forces of the United States and benefits protected prior to the general
> amendment of this chapter by Pub. L. 103-353.  This section, as in effect on the day
> before Oct. 13, 1994, continues to apply to reemployments initiated before the end
> of the 60 day period beginning Oct. 13, 1994 . . . .

38 U.S.C. § 4301 prior provisions.  We note that USERRA does not indicate the intent to make any

prior statute retroactive, however.  As a result, we must apply the version of the statute in effect

when Watters's reemployment was initiated on July 26, 1988.  Thus, the applicable statute for *de*

*novo* review of the law in this case is the 1988 version of the VRRA, which was codified at 38

U.S.C. §§ 2021–27 (1988).

## B.

The VRRA provided that employees who leave their jobs as a result of being drafted into the

military must be reemployed in the same or similar position when they return:

> [A]ny person who is inducted into the Armed Services of the United States . . . for
> training and service and who leaves a position . . . in the employ of any employer in
> order to perform such training and service, and . . . (2) makes application for
> reemployment within ninety days after such person is relieved from such training and
> service . . . (B) if such position was in the employ of a . . . private employer, such

> person shall—(i) if still qualified to perform the duties of such position, be restored by such employer . . . to such position or to a position of like seniority, status, and pay . . . .

38 U.S.C. § 2021(a) (1988). Section 2024 extended the protections of "this chapter" beyond draftees to "[a]ny person who, after entering the employment on the basis of which such person claims restoration or reemployment, enlists in the Armed Forces . . . ." 38 U.S.C. § 2024(a) (1988). The statute limited its protection to persons whose "total of any service . . . performed . . . after August 1, 1961, does not exceed five years, and if the service in excess of four years after August 1, 1961, is at the request and for the convenience of the Federal Government . . . ." *Id.* The VRRA provides further protections for veterans once they restart their previously held employment, including guaranteeing that they suffer no loss of seniority. *See* 38 U.S.C. § 2021(b)(1)(A) (1988). These protections will be discussed in greater detail below.

Under the plain language of the statute, it is clear that Watters qualifies for protection from the VRRA. Watters was employed with Tilden beginning in 1978, enlisted in the Air Force "after entering the employment on the basis of which such person claims restoration or reemployment," and sought reemployment with Tilden within 90 days of completing his military service. Watters's military service lasted approximately four years, from some time in March 1983 until April 17, 1987, which falls within the five year cap on service occurring after 1961. Even though the magistrate judge did not make any findings as to the exact length or nature of Watters's service, there is nothing in the record to suggest that the approximate month he may have spent in the military beyond four years was not at the "request and for the convenience of the Federal Government," and thus we will not deny him protection on those grounds. Finally, on his return from the military, Watters was still

7

qualified to perform the duties of his prior position, as is required by § 2021(a)(2)(B)(i). We therefore hold that Watters is entitled to protection under the VRRA.

Tilden also contends that Watters should not get protection from the VRRA because there is no evidence that his termination was motivated by his military service. However, this argument is premised on the current version of USERRA, which, as discussed above, does not apply in this case. The applicable 1988 version of the VRRA did not require the employee to show that his employer had fired him because of his military service.

Tilden next argues that Watters is not entitled to VRRA protection because, as a result of having been laid off, he was not absent from employment as a result of his military service. First, although it is true that Watters was laid off from work at the time he enlisted, the labor agreement between his union and Tilden treated laid-off workers as employees. Second, Tilden's position is undermined by the fact that, before Watters entered into military duty, he applied for and received a military leave of absence from Tilden. This step would obviously have been unnecessary if he had already been terminated. Finally, this argument is also premised on the current version of USERRA, which entitles "any person whose absence from a position of employment is necessitated by reason of service" to reemployment rights and benefits. 38 U.S.C. § 4312(a) (2006). The 1988 VRRA, on the other hand, only required that the employee claiming its protection have enlisted in the military "*after entering the employment* on the basis of which such person claims restoration or reemployment." 38 U.S.C. § 2024(a) (1988) (emphasis added). Although blind adherence to the statutory language here would create perverse results if the VRRA required only that an employee

8

enlist after being employed, this is not a concern in this case, where, as discussed above, Watters was still employed by Tilden at the time he entered the Air Force.[2]

Tilden's third argument is that Watters is not entitled to reemployment under the VRRA because he was terminated in accordance with the seniority system. According to Tilden, because Watters's seniority and pension creeps ran out while he was serving in the military and there were no job opportunities available for someone of his seniority level at any time between when he was laid off and when he was rehired, it was allowed to discharge him irrespective of the VRRA. In support of this contention, Tilden cites *Kelly v. Ford Instrument Co.*, 298 F.2d 399 (2d Cir. 1962), which was decided under a predecessor statute to the VRRA, the Universal Military Training and Service Act of 1951, 50 U.S.C. app. § 459. In *Kelly*, Kelly had been laid off at the time he entered the armed services. *Kelly*, 298 F.2d at 400. During his service, his employer sent notice to him that it needed workers and that he was entitled to reinstatement. *Id.* Because of his commitment to the military, Kelly was unable to return to work, but upon his return and reemployment he demanded seniority credit for the time he had spent in the military. *Id.* The Second Circuit held, "When Kelly entered service he was entitled to be rehired at the relative seniority earned under the contract if need

---

[2]The First Circuit reached a similar conclusion when interpreting § 4304(b)(1) of the 1993 VRRA. *See Lapine v. Town of Wellesley*, 304 F.3d 90, 96 (1st Cir. 2002). In *Lapine*, the plaintiff resigned from his position as a police officer for personal reasons and joined the United States Army Reserve shortly thereafter. *Id.* at 94. The court read the plain language of subsection (b)(1), which is substantially similar to subsection (a) except that it covers reservists, not to require "the order or call" to serve in the military to "be timed so as to arrive while the civilian employment is still ongoing." *Id.* at 96–97. The ambiguous language of the statute was "open to two interpretations: that the call or order to active duty will issue during the employment; or, alternatively, that it may issue after termination of the employment with appropriate linkage between leaving and entry upon active duty." *Id.* at 97.

arose for his labor at any time prior to the termination of the [creep]." *Id.* at 404. At the point that he was recalled to work, "he should have been treated as on military leave of absence under the employment contracts." *Id.* Therefore, he was entitled to the seniority he would have gained had he returned to work when the employer recalled him. *Id.*

Tilden argues that this Court should follow *Kelly* and hold that Watters had no right to reemployment because, unlike Kelly's employer, Tilden was not able to, and did not, call Watters back to work while he was serving in the military. The magistrate judge considered this same argument and distinguished *Kelly* on the ground that Kelly had never told his employer of his military status and thus did not enter official military leave until the company contacted him to offer reemployment and learned that he had enlisted. Watters, on the other hand, requested and was granted a military leave of absence, which, according to the magistrate judge, froze his employment status under the VRRA. On appeal, Tilden argues that the magistrate judge was wrong to distinguish *Kelly* on those grounds because it should not matter who—Tilden or a court—grants the leave of absence.

We agree with the magistrate judge that the critical fact is that Watters requested and was granted a military leave of absence. The VRRA provides: "Any person who is restored to or employed in a position in accordance with the provisions of clause . . . (B) of subsection (a) of this section shall be considered as having been on furlough or leave of absence during such person's period of training and service in the Armed Forces . . . ." 38 U.S.C. § 2021(b)(1) (1988). Tilden's interpretation is therefore flawed; it recognizes that the VRRA protects employment rights and treats an employee as though he were on a leave of absence, yet it would allow a veteran to have his

contract terminated during a military leave of absence because of operation of the seniority system.

The Supreme Court considered a similar factual situation in *dicta* in *Fishgold v. Sullivan Drydock & Repair Corp.*:

> The "position" to which the veteran is restored is the "position" which he left plus cumulated seniority. Certainly he would not have been discharged from such position and unable to get it back, if at the time of his induction into the armed services he had been laid off by operation of a seniority system.

328 U.S. 275, 287–88 (1946). The purpose of the VRRA and its predecessor and successor statutes was to protect employees who choose to serve the country in the military. *See, e.g.*, *id.* at 284 ("The Act was designed to protect the veteran in several ways. He who was called to the colors was not to be penalized on his return by reason of his absence from his civilian job. He was, moreover, to gain by his service for his country an advantage which the law withheld from those who stayed behind."). "And no practice of employers or agreements between employers and unions can cut down the service adjustment benefits which Congress has secured the veteran under the Act." *Id.* at 285. Moreover, the Supreme Court has repeatedly said that the VRRA and acts like it should be interpreted liberally. *See, e.g.*, *Coffy v. Republic Steel Corp.*, 447 U.S. 191, 196 (1980) (referring to the Vietnam Era Veterans' Readjustment Assistance Act of 1974); *Fishgold*, 328 U.S. at 285 (referring to a predecessor statute, the Selective Training and Service Act of 1940).

Tilden argues that allowing Watters's seniority and pension creeps to be frozen during his military leave of absence would allow him to extend his right to be recalled four years beyond what was allowed in the labor agreement. Although Tilden is correct that Watters receives more benefits by operation of the statute than he would have if he had simply remained a laid-off employee, that

is exactly what the statute intended. *See Fishgold*, 328 U.S. at 285. Thus the result that Watters receives more benefits from serving in the military is not at all inequitable.[3] Furthermore, it would be pointless for an employee to procure a military leave of absence if the employer could terminate his employment contract during the leave. Tilden is also correct in asserting that there is no "specific mention of or provision for a military leave of absence" under the labor agreement. However, that did not stop Tilden from granting Watters a leave of absence in 1983 and, therefore, will not form the basis for our denying Watters the protection of the VRRA. Watters fits under the auspices of the 1988 VRRA, and we hold that he is entitled to its protection.

IV.

Having decided that Watters receives protection under the VRRA, we must next determine how much seniority and pension credit he is due as a result. Watters requested from the district court, and was granted, seniority credit equal to the full amount of time between the date of termination of his employment, April 13, 1985, and the date of rehire, July 26, 1988, for a total of 3 years, 3 months, and 13 days. The magistrate judge ruled that he was entitled to the full amount because the remaining portion of his seniority creep, which had been frozen when he applied for a leave of absence, was still running on the date of his rehire. When calculating his award of pension credit, because Watters was unable to prove that any employees junior to him were recalled at any point between his date of layoff and date of rehire, and because his pension creep expired before he was rehired, the magistrate judge awarded credit equal to only the time between termination and

---

[3]We address below the different question as to whether Watters automatically gets extra seniority credit for the time that he spent on military leave.

rehire, as above, minus the time between pension creep expiration, September 17, 1987, and rehire,

July 26, 1988. This award equaled 10 months and 8 days, for a total credit of 2 years, 5 months, and

4 days. Because this is a question of law, we it review *de novo*. *See Pressman*, 384 F.3d at 185.

If a person qualifies for protection under the VRRA, the statute provides certain benefits:

> Any person who is restored to or employed in a position in accordance with the
> provisions of clause . . . (B) of subsection (a) of this section shall be considered as
> having been on furlough or leave of absence during such person's period of training
> and service in the Armed Forces [and] shall be so restored or reemployed without
> loss of seniority . . . .

38 U.S.C. § 2021(b)(1) (1988). The statute also reported the congressional intent in passing the

statute:

> It is hereby declared to be the sense of the Congress that any person who is restored
> to or employed in a position in accordance with the provisions of clause (A) or (B)
> of subsection (a) of this section should be so restored or reemployed in such manner
> as to give such person such status in the person's employment *as the person would
> have enjoyed if such person had continued in such employment continuously* from
> the time of such person's entering the Armed Forces until the time of such person's
> restoration to such employment, or reemployment.

38 U.S.C. § 2021(b)(2) (1988) (emphasis added).

The Supreme Court analyzed these provisions in *Fishgold*, albeit in the context of a

predecessor statute to the VRRA. The Court wrote that the provisions protect a veteran from

"receiving a job inferior to that which he had before entering the armed services" and that "[h]e shall

be 'restored without loss of seniority' . . . with all of the insurance and other benefits accruing to

employees on furlough or leave of absence." *Fishgold*, 328 U.S. at 284. The Court likened the

effect of the provisions to an escalator: "[H]e does not step back on the seniority escalator at the

point he stepped off. He steps back on at the precise point he would have occupied had he kept his

13

position continuously during the war." *Id.* at 284–85. In the case of the welder in *Fishgold*, "He acquires not only the same seniority he had; his service in the armed services is counted as service in the plant so that he does not lose ground by reason of his absence." *Id.* at 285. However, the Court limited the escalator principle:

> But we would distort the language of these provisions if we read it as granting the veteran an increase in seniority over what he would have had if he had never entered the armed services. We agree with the Circuit Court of Appeals that by these provisions Congress made the restoration as nearly a complete substitute for the original job as was possible. No step-up or gain in priority can be fairly implied. Congress protected the veteran against loss of ground or demotion on his return. The provisions for restoration without loss of seniority to his old position or to a position of like seniority mean no more.

*Id.* at 285–86.

This limitation creates somewhat of a paradox for Watters. On the one hand, the Court's interpretation of subsection (b)(1) means that Watters should be restored without loss of seniority and with all benefits accruing to employees on leave of absence.[4] Subsection (b)(2) provides that Watters should be reemployed in such position as he would have enjoyed had he been employed with Tilden throughout his time in the military. However, because Watters was laid off at the time he joined the military, had Watters not enlisted he would have been terminated in 1985, creating a break in service from that point until he could have been reemployed in 1988. As the magistrate judge

---

[4]The labor agreement does not contain a provision on military leave of absence aside from noting that leave should be allowed in accordance with federal law. It does, however, for example, allow for leaves of absence for service as an elected official. Subsection 10.11 provides that a person elected to office in government "shall be granted a leave of absence for up to five years. During such period he shall continue to accumulate continuous service [in accordance with the calculations provided]."

found—and the record does not show his finding to be clearly erroneous—between 1981 and 1988, Tilden did not call back to work any employees junior to Watters, nor hire any new employees, to fill positions for which Watters was qualified. Therefore, applying the statute as though Watters were not laid off when he enlisted would effect a windfall, as Watters would get credit for continuous service for time that he would not have gotten credit for if he had not enlisted. As the Court wrote in *Fishgold*, giving Watters the interpretation he wants would "distort the language of these provisions." *Id.* at 285. However, treating Watters as though he had not enlisted at all, as Tilden asks this Court to do, would result in his receiving no benefit whatever from the VRRA, which we have determined is also contrary to the purpose of the VRRA.

Subsection (b)(1) of the 1988 VRRA states that a veteran who is reemployed under § 2021 should be "restored or reemployed *without loss* of seniority." 38 U.S.C. § 2021(b)(1) (1988) (emphasis added). We read the text of the statute, therefore, to mean that, in this unusual circumstance, Watters should have been restored at reemployment to a position no worse than what he had when he enlisted. Therefore, his status at the end of his term of military service in 1987 is the same as what it was in 1983—a laid-off employee of Tilden with 5 months remaining on his pension creep and 2 years and 2 days remaining on his seniority creep. The four-year leave of absence serves to freeze his employment status but does not create four additional years of continuous service. Under this interpretation, Watters does not receive a windfall, but the VRRA also operates to his benefit by extending the end of his pension and seniority creeps beyond the end of his military service.

We must, therefore, next determine the proper calculation of Watters's seniority and pension in light of these conclusions. When Watters was discharged from the Air Force, his pension and seniority creeps began to run again. Under the parties' calculations his pension creep lasted until September 17, 1987, and his seniority creep lasted until April 19, 1989. Watters was rehired July 26, 1988, within the run of his seniority creep but after his pension creep expired. This gives Watters unbroken, continuous service for the purposes of seniority from the date he was originally hired, January 16, 1978, through the date of his eventual rehire, July 26, 1988, or a period of 10 years, 6 months, and 10 days. However, his seniority did not escalate during the time he was on military leave of absence; thus, the length of the leave should be subtracted, leaving him with 6 years, 5 months, and 4 days seniority credit. However, Tilden has already credited Watters more than that amount of time. After the 1993 contract, Tilden extended Watters's seniority to December 12, 1981—yielding a total of 6 years, 7 months, and 14 days—which is 2 months and 10 days longer than the term they were obligated to give. Watters's pension creep ran out before he was rehired. Because Tilden never hired any employees junior to him, Watters's pension credit should include only the initial term of employment plus 2 years.

Watters is correct that at the time of his rehire, Tilden had not given him the amount of seniority and pension credit he was owed under the VRRA. Subsequently, however, Tilden has made up for its error, crediting him with more than enough seniority and pension credit. As for the fact that Watters has received too much credit, it would be inconsistent with the purpose of the VRRA to have it operate to reduce a veteran's benefits. Therefore, we will treat the amount of

seniority Watters was entitled to as a floor; any extra credit given by the labor agreements and at

Tilden's discretion cannot now be taken away by operation of the VRRA.

V.

For the reasons discussed above, we vacate the judgment of the magistrate judge and remand

the case with instructions to enter judgment in accordance with the discussion above.