<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>
File Name: 14a0388n.06

No. 13-6015

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
May 28, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| WAYNE COUNTY HOSPITAL, INC.; | ) | |
| OHIC, aka Ohio Hospital Insurance Company, | ) | |
| | ) | |
|    Plaintiffs-Appellants, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE EASTERN DISTRICT OF |
| | ) | KENTUCKY |
| PEETER JAKOBSON, | ) | |
| | ) | |
|    Defendant-Appellee. | ) | OPINION |

BEFORE: MOORE, WHITE, and DONALD, Circuit Judges.

**BERNICE B. DONALD, Circuit Judge.** Plaintiffs-Appellants, Wayne County Hospital, Inc. and OHIC, appeal from a July 17, 2013 jury verdict in favor of Defendant-Appellee, Dr. Peeter Jakobson, entered by the United States District Court for the Eastern District of Kentucky. After a patient successfully sued Wayne County Hospital in Kentucky state court for negligence relating to the reading of a mammogram, Wayne County Hospital and OHIC filed this action seeking indemnity and subrogation from Dr. Jakobson, the radiologist who read the mammogram. On appeal, Wayne County Hospital and OHIC contend that the district court erred by failing to give preclusive effect to the Kentucky state jury's earlier findings and by bifurcating the federal jury trial into a liability phase and a damages phase. For the following reasons, we **AFFIRM** the judgment of the district court.

## I. Background

This controversy began in August of 2000 when Linda Hardwick obtained a mammogram in the radiology department at Wayne County Hospital ("the Hospital"). Dr. Jakobson read the mammogram results, but he missed a small mass in Mrs. Hardwick's right breast. This error led to a one-year delay in the discovery of a Stage 1 invasive carcinoma.

On August 1, 2002, Mrs. Hardwick and her husband filed an action in Wayne Circuit Court against the Hospital for negligence and loss of consortium relating to the performance and reading of the August 2000 mammogram (the "Hardwick litigation"). The Hardwicks' complaint did not name Dr. Jakobson as a defendant, and neither the Hospital nor OHIC sought to join him as a party. The Hospital pursued a litigation strategy that expressly prevented joining Dr. Jakobson as a party or tendering the defense to him. The Hospital chose not to join Dr. Jakobson to keep things from getting ugly at trial and chose not to tender the defense so it would not lose control. Two weeks prior to trial in the Hardwick litigation, the Hospital informed Dr. Jakobson that it would seek indemnification from him in the event of a plaintiff's verdict.

The Hardwick litigation went to trial in February of 2006. The state trial court granted two motions for directed verdicts, one from each party, at the close of all the evidence. The Hardwicks' motion requested judgment as a matter of law that Dr. Jakobson was the Hospital's ostensible agent. The Hospital's motion requested judgment as a matter of law that no other Hospital employee or agent save Dr. Jakobson was negligent. The jury returned an $828,520.00 verdict, plus costs and interest, in favor of the Hardwicks after finding that Dr. Jakobson negligently read the August 2000 mammogram. After an unsuccessful appeal to the Kentucky

Court of Appeals, OHIC, the Hospital's insurance carrier, satisfied the judgment in the amount of $1,052,962.94 on March 28, 2008.

Wayne County Hospital and OHIC (collectively, "Appellants") then filed the instant action against Dr. Jakobson in the United States District Court for the Eastern District of Kentucky on February 11, 2009, seeking indemnification and subrogation based on the jury verdict in the Hardwick litigation. Dr. Jakobson filed a Motion to Foreclose Preclusion in the district court, and Appellants filed a Motion for Summary Judgment based on principles of claim and issue preclusion. The district court granted Dr. Jakobson's motion and denied Appellants' motion.

The parties and the district court then attempted to arrive at a procedure by which to conduct a second jury trial without unfairly prejudicing either party's case in light of the district court's preclusion ruling. At the final pretrial conference, the district court proposed bifurcating the federal jury trial into a liability phase and a damages phase:

> This does raise, I think, the interesting issue in terms of the procedural posture of the case, and it would seem to me that it could easily be addressed by simply bifurcating the case. So there would be . . . a liability phase in which the plaintiff would have an opening statement that would presumably be something like, Ladies and gentlemen of the jury, the Court has determined that at this portion of the trial, we are to present evidence that will show you that Dr. Jakobson was negligent as it relates to a particular procedure that took place, and we'll have a liability phase. There can be no discussion of damages in that phase, no discussion of the previous proceeding in that phase, and the . . . hospital now will be able to come in and . . . put on proof that show in fact that the doctor was negligent. And once that occurs, if that were to occur, then we'll go to a damages phase . . . .

Neither party objected to the bifurcation. Specifically, counsel for Appellants responded to the district court's proposal as follows:

> Well, we certainly appreciate it. And I think this may be a good way of resolving the tension, like we said, between our damages claim and the

defendant's, I think, justifiable concern that the previous trial will somehow give the impression that liability has already been decided one way or another, so I think -- we don't have any particular objection. We, of course, would maintain that we would be allowed to present our damages as they actually occurred from having to pay the judgment and interest and the costs of the previous trial, but, of course, that, I suppose, would come in the damages phase . . . .

Following the liability phase of the trial, the jury returned a verdict in Dr. Jakobson's favor, so the parties did not proceed to the damages phase. Appellants then filed a timely Notice of Appeal with the district court, and this appeal followed.

## II. Application of Res Judicata

We begin with Appellants' res judicata arguments. In their Motion for Summary Judgment below, Appellants argued that both subparts of the doctrine of res judicata—claim preclusion and issue preclusion—prevent Dr. Jakobson from relitigating the claims and issues presented in the prior Hardwick litigation. Dr. Jakobson argued in his Motion to Foreclose Preclusion that preclusion principles are inapplicable because he was not in privity with Appellants and Appellants failed adequately to protect and represent his interests during the Hardwick litigation. The district court agreed with Dr. Jakobson, so it granted his Motion to Foreclose Preclusion and denied Appellants' Motion for Summary Judgment.

Arguments in favor of preclusion in this diversity action by the Hospital and its insurer for indemnity and subrogation under Kentucky law implicate 28 U.S.C. § 1738.[1] In § 1738, "Congress has specifically required all federal courts to give preclusive effect to state-court

---

[1] "Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."

judgments whenever the courts of the State from which the judgments emerged would do so[.]" *Allen v. McCurry*, 449 U.S. 90, 96 (1980). Because a state court rendered the jury verdict at issue, we look to that state's law of preclusion to determine whether the prior jury verdict should preclude relitigation of claims and issues in this case. *Taylor v. Sturgell*, 553 U.S. 880, 891 n.4 (2008) ("For judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits." (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001))).

A. Claim Preclusion

Under Kentucky law, a party must satisfy three requirements in order to invoke claim preclusion, which "bars a party from re-litigating a previously adjudicated cause of action and entirely bars a new lawsuit on the same cause of action." *Yeoman v. Commonwealth of Ky., Health Policy Bd.*, 983 S.W.2d 459, 465 (Ky. 1998) (citing *Allen*, 449 U.S. 90). "First, there must be identity of the parties. Second, there must be identity of the causes of action. Third, the action must have been resolved on the merits." *Id.* (citations omitted) (citing *Newman v. Newman*, 451 S.W.2d 417, 419 (Ky. 1970)).

The district court declined to apply claim preclusion below because it found that Appellants could not satisfy the first requirement, identity of the parties. A party seeking to invoke claim preclusion can meet this requirement either by showing actual identity of the parties or by showing that a non-party is in privity with a party from the prior suit such that the policies of re judicata—the public interest in bringing an end to litigation and the individual's interest in freedom from multiple and vexatious litigation of the same cause—are served. *BTC Leasing, Inc. v. Martin*, 685 S.W.2d 191, 197-98 (Ky. Ct. App. 1984). As there is no actual

identity of the parties between the Hardwick litigation and the present lawsuit, Appellants rely on

privity. The *BTC Leasing* court described privity as follows:

> While the concept of privity defies a precise, inflexible definition, a key consideration for its existence is the sharing of the same legal right by the parties allegedly in privity. This is to ensure that the interests of the party against whom res judicata has been asserted have been adequately represented by his purported privy at the initial trial of the cause of action.

*Id.* at 198 (citing 46 Am. Jur. 2d Judgments § 532 (1969)). Kentucky's highest court clearly

stated in *Newark Insurance Co. v. Bennett*, 355 S.W.2d 303 (Ky. 1962), that "the fact that two

parties as litigants . . . happen to be interested in proving or disproving the same facts creates no

privity between them." *Id.* at 304 (internal quotation marks omitted). Instead, the identity of the

legal interest between the parties must be absolute. *Id.*

The parties dispute the proper standard of review for the district court's claim preclusion

determination, with Appellants arguing for de novo review and Dr. Jakobson advocating for

clear error review. The specific issue Appellants raise in this aspect of the appeal, however,

concerns the district court's determination that the Hospital and Dr. Jakobson are not privies.

"Whether privity exists in a given case is a question of fact." *Vulcan, Inc. v. Fordees Corp.*, 658

F.2d 1106, 1109 (6th Cir. 1981) (citing *Harrison v. Bloomfield Bldg. Indus., Inc.*, 435 F.2d 1192,

1195 (6th Cir. 1970)). Accordingly, we will review the lower court's finding that privity did not

exist between Dr. Jakobson and the Hospital for clear error. *See id.* ("The scope of our review is

therefore limited, and we must uphold the District Court's findings unless they are clearly

erroneous."). A district court's factual finding is clearly erroneous when "the reviewing court on

the entire evidence is left with the definite and firm conviction that a mistake has been

committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

The district court found Dr. Jakobson was not in complete privity with Appellants with respect to all issues and claims because the Hospital notifying Dr. Jakobson two weeks before trial in the Hardwick litigation that it intended to seek indemnification from Dr. Jakobson in the event of the plaintiff's verdict "suggests an antagonistic posture rather than an identity of interest." Because we are not "left with the definite and firm conviction that a mistake has been committed," *U.S. Gypsum Co.*, 333 U.S. at 395, this factual finding underlying the district court's privity determination is not clearly erroneous.

Although generally accepted principles of res judicata recognize that judgments concerning persons having a relationship in which one is vicariously responsible for the conduct of another may have preclusive effect under certain circumstances, Appellants offer no precedent, and we have found none, that would recognize either claim or issue preclusion in their action against Dr. Jakobson under these circumstances.

We have no quarrel with Appellants' assertion that the Hospital and Dr. Jakobson are in privity for the purposes discussed in the cases Appellants cite. The Hardwicks' claim against the Hospital was litigated, and the Hospital and Dr. Jakobson are in privity with respect to that claim. That is all the law contemplates. This privity does not mean that the earlier suit resolved the Hospital's indemnification action against Dr. Jakobson.

The Restatement (Second) of Judgments considers the various relationships that can lead to the application of issue and claim preclusion to non-parties to the first action. Section 51, Persons Having a Relationship in Which One Is Vicariously Responsible for the Conduct of the Other, addresses the circumstance presented here. That section provides:

> If two persons have a relationship such that one of them is vicariously responsible
> for the conduct of the other, and an action is brought by the injured person against

one of them, the judgment in the action has the following preclusive effects against the injured person in a subsequent action against the other.

(1) A judgment against the injured person that bars him from reasserting his claim against the defendant in the first action extinguishes any claim he has against the other person responsible for the conduct unless:

(a) The claim asserted in the second action is based upon grounds that could not have been asserted against the defendant in the first action; or

(b) The judgment in the first action was based on a defense that was personal to the defendant in the first action.

(2) A judgment in favor of the injured person is conclusive upon him as to the amount of his damages, unless:

(a) There were limitations on the competence of the forum in the first action preventing him from obtaining the full measure of his damages, as stated in § 26(1)(c), or he exercised the option stated in § 26(1)(e) to divide his claim; or

(b) Different rules govern the measure of damages in the two actions.

(3) If the action is brought against the primary obligor and judgment is against the injured person, it extinguishes the claim against the person vicariously responsible if under applicable law the latter is an indemnitor whose liability arises only when the primary obligor is found liable to the injured person.

(4) [Addresses consent judgments.]

Restatement (Second) of Judgments § 51 (1982).

This section describes the circumstances in which a judgment involving a party in the position of the Hospital has preclusive effect in a subsequent action. As applicable here, the Hardwicks are bound by the jury's determination of the amount of their damages; had they lost their action against the Hospital, they would not have been able to start a new action against Dr. Jakobson; and, had the Hardwicks sued Dr. Jakobson and lost, they would not be able to then sue

the Hospital. There is no support in this section for the Hospital's assertion that the Hardwick's

judgment against the Hospital has preclusive effect in the Hospital's action against Dr. Jakobson.

Appellants argue that the Kentucky Court of Appeals' decision in *Blue Valley Creamery Co. v. Cronimus*, 110 S.W.2d 286 (Ky. 1937), requires reversal, relying on the following passage:

> "[T]he rule is general and well settled that where the liability, if any, of a principal or master to a third person is purely derivative and dependent entirely on the principle of respondent [sic] superior, a judgment on the merits in favor of the agent or servant, or even a judgment against him, *in so far as it fixes the maximum limit of liability*, is res judicata in favor of the principal or master though he was not a party to the action."

*Id.* at 290 (emphasis added) (quoting *Myers' Adm'x v. Brown*, 61 S.W.2d 1052, 1053-54 (Ky. 1933)). The emphasized language was omitted by Appellants, but is crucial to understanding the principle relied on. That principle is exactly as set forth in Restatement § 51. *Cronimus* dealt with the respondeat superior liability of two principals whose agents were involved in a car accident. *See id.* at 287-88. In the first suit, Bohn, the driver of the Cronimus vehicle, and his passenger, Eastin, sued Blue Valley Creamery for injuries suffered in the accident. *Id.* Blue Valley argued that Bohn was at least contributorily negligent[2] and a proximate cause of the accident. *Id.* at 288. The first suit ended with a judgment in favor of the plaintiffs against Blue Valley. *Id.* Blue Valley then sued Cronimus to recover for damages to its truck, and Cronimus counterclaimed. *Id.* The trial court held that the first suit determined who was responsible for the accident, and because both principals were in privity with their agents and thus mutuality of estoppel was present, Blue Valley could not relitigate the issue of fault. *Id.* The court instructed the jury that the liability of the driver of the Blue Valley truck was determined and the jury was

---

[2] At the time, contributory negligence barred any recovery by the party who was negligent.

to decide only the question of damages for the Cronimus truck.  *Id.*  The Kentucky Court of Appeals affirmed.  *Id.* at 290.

*Cronimus* and the cases discussed therein are inapposite here.  In accordance with the Restatement, they hold only that a principal whose agent prevails against another principal in a prior suit can use that judgment both as a defense to a later suit brought by the other principal and offensively against the other principal whose agent lost the first action.  Blue Valley—the party whose case was dismissed based on the earlier judgment and against whom the second judgment was entered—was a party to both suits.  Cronimus, although not a party to the first suit, was in privity with the plaintiff in that suit.  Here, the principal is suing its own agent, who was not a party to the first suit.

Another section of the Restatement deals with indemnitors and indemnitees.  Section 57, Effect on Indemnitor of Judgment Against Indemnitee, provides:

> (1) Except as stated in Subsection (2) [conflict of interest regarding the injured person's claim against the indemnitee][3], when one person (the indemnitor) has an obligation to indemnify another (the indemnitee) for a liability of the indemnitee to a third person, and an action is brought by the injured person against the indemnitee and the indemnitor is given reasonable notice of the action and an opportunity to assume or participate in its defense, a judgment for the injured person has the following effects on the indemnitor in a subsequent action by the indemnitee for indemnification:

---

[3] There is no conflict of interest here where the Hospital's liability rested solely on the doctor's negligence. § 57(3) provides:

> A "conflict of interest" for purposes of this Section exists when the injured person's claim against the indemnitee is such that it could be sustained on different grounds, one of which is within the scope of the indemnitor's obligation to indemnify and another of which is not.

Restatement (Second) of Judgments § 53 (1982).

> (a) The indemnitor is estopped from disputing the existence and extent of the indemnitee's liability to the injured person; and
>
> (b) The indemnitor is precluded from relitigating issues determined in the action against the indemnitee if:
>
>> (i) the indemnitor defended the action against the indemnitee; or
>>
>> (ii) the indemnitee defended the action with due diligence and reasonable prudence.

Restatement (Second) of Judgments § 57 (1982). This section more appropriately addresses the situation here, but it provides no relief for Appellants. In addressing the privity issue, the district court determined that the Hospital's notice to Dr. Jakobson two weeks before the Hardwick trial that it intended to seek indemnification from him in the event of the plaintiff's verdict "suggests an antagonistic posture rather than an identity of interest," thus indicating that Dr. Jakobson, as indemnitor, was not "given reasonable notice of the action and an opportunity to assume or participate in its defense."

### B.  Issue Preclusion

The factual question of privity is not a requirement for the application of Kentucky issue preclusion law. *Yeoman*, 983 S.W.2d at 465. We will accordingly review the district court's decision on this issue de novo. *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 572 (6th Cir. 2008) ("We review de novo a district court's application of res judicata law.").

Under Kentucky law, a party must satisfy four requirements in order to invoke issue preclusion, which "bars the parties from relitigating any issue actually litigated and finally decided in an earlier action." *Yeoman*, 983 S.W.2d at 465. The *Yeoman* court described the requirements as follows:

> First, the issue in the second case must be the same as the issue in the first case. Second, the issue must have been actually litigated. Third, even if an issue was actually litigated in a prior action, issue preclusion will not bar subsequent litigation unless the issue was actually decided in that action. Fourth, for issue preclusion to operate as a bar, the decision on the issue in the prior action must have been necessary to the court's judgment.

*Id.* (citing Restatement (Second) of Judgments § 27 (1982)). A party's ability to satisfy these requirements does not end the analysis, however, because issue preclusion "applies only if the party against whom it is sought to be applied had a realistically full and fair opportunity to litigate the issue and if principles of justice and fairness would be served by its application." *Berrier v. Bizer*, 57 S.W.3d 271, 281 (Ky. 2001).

The district court correctly found that Appellants could satisfy the four *Yeoman* requirements with respect to the issues of negligence, loss of consortium, and ostensible agency decided in the Hardwick litigation. But the court declined to apply issue preclusion because it found that Dr. Jakobson did not have a full and fair opportunity to litigate those issues in the Hardwick litigation.

A non-party to a prior lawsuit "generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit. The application of . . . issue preclusion to nonparties thus runs up against the 'deep-rooted historic tradition that everyone should have his own day in court.'" *Taylor*, 553 U.S. at 892-93 (quoting *Richards v. Jefferson Cnty.*, 517 U.S. 793, 798 (1996)). The Hardwicks never named Dr. Jakobson as a party to their suit against the Hospital, and the Hospital never sought to join Dr. Jakobson in the litigation or tender the defense to him. In fact, the Hospital made strategic decisions specifically not to join Dr. Jakobson or tender the defense so the Hospital could maintain control over the defense and keep the trial from getting ugly. The Hospital knew that it could seek indemnification from Dr.

Jakobson in the event it lost the Hardwick litigation. It accordingly did not have the same incentive as Dr. Jakobson to defend the suit vigorously. The fact that Dr. Jakobson secured a jury verdict of no liability in the federal trial underscores this conclusion. In these circumstances, it would have been unfair for the district court to deprive Dr. Jakobson of his day in court. We therefore agree that Dr. Jakobson did not have a full and fair opportunity to litigate any of the allegedly precluded issues in the Hardwick litigation and that applying issue preclusion would not serve principles of justice and fairness. *See Berrier*, 57 S.W.3d at 281.

## III. Bifurcation & Evidentiary Issues

We now turn to Appellants' arguments concerning the district court's proposal to bifurcate the federal jury trial and the district court's evidentiary ruling excluding any mention of the Hardwick litigation from the liability phase of that trial. Appellants contend that "the district court's sua sponte decision to bifurcate the trial was entirely premised on an erroneous evidentiary ruling; namely, that any evidence of the [Hardwick litigation] should be excluded from the trial's first phase concerning whether Dr. Jakobson breached his standard of care." Appellant Br. at 28.

Once again, the parties disagree as to the standard of review that applies to the district court's actions. Typically, we review both a district court's decision to bifurcate and its decision to exclude evidence for abuse of discretion. *See, e.g.*, *Wilson v. Morgan*, 477 F.3d 326, 339 (6th Cir. 2007) ("We review a district court's decision to bifurcate a trial for abuse of discretion."); *Pressman v. Franklin Nat'l Bank*, 384 F.3d 182, 187 (6th Cir. 2004) ("We review the district court's exclusion of evidence for abuse of discretion . . . ."). Appellants argue in favor of this standard.

Dr. Jakobson, however, urges us to refuse review of these alleged errors altogether under the invited error doctrine because Appellants agreed to the bifurcation. The invited error doctrine provides that "a party may not complain on appeal of error that he himself invited or provoked the court or the opposite party to commit." *FDIC v. AmTrust Fin. Corp.*, 694 F.3d 741 (6th Cir. 2012) (quoting *Harvis v. Roadway Express, Inc.*, 923 F.2d 59, 60 (6th Cir. 1991)) (internal quotation marks omitted). But the record shows that the district court proposed bifurcation and Appellants agreed. Appellants did not *provoke* the court or Dr. Jakobson to commit error, so we will not apply the invited error doctrine.

Declining to apply the invited error doctrine, however, does not end our standard of review analysis. Instead, we apply plain error review to Appellants' challenge to the bifurcation proposal and evidentiary ruling because Appellants did not object in the district court. (PageID 2453-54); *United States v. Cowart*, 90 F.3d 154, 157 (6th Cir. 1996) ("Th[e] usual standard of review, however, is superseded when, as here, the complaining party failed to object to the [exclusion of the] evidence in the district court."). The Supreme Court has described the plain error standard as follows:

> Under that test, before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affect[s] substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.

*Johnson v. United States*, 520 U.S. 461, 466-67 (1997) (alterations in original) (citation omitted) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)) (internal quotation marks omitted).

Even assuming *arguendo* that the district court committed an error that was plain, Appellants cannot show that any error affected their substantial rights. Appellants' briefing on the issue of prejudice is devoid of citations to the record or authority and consists entirely of

conjecture that "the jury was left to speculate as to why the Hospital might have cause to sue Dr. Jakobson." Appellant Br. at 30. The district court's decision to bifurcate the federal jury trial and exclude evidence of the Hardwick litigation from the liability phase accordingly was not plain error.

IV.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.