RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0210P (6th Cir.)
File Name: 03a0210p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

WARREN K. HARRISON,
    *Plaintiff-Appellee,*

    *v.*

MONUMENTAL LIFE
INSURANCE COMPANY,
    *Defendant-Appellant.*

No. 01-1345

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 99-70685—Paul D. Borman, District Judge.

Argued: January 29, 2003

Decided and Filed: June 24, 2003

Before: GUY and MOORE, Circuit Judges; BECKWITH,
District Judge.*

---

* The Honorable Sandra S. Beckwith, United States District Judge for
the Southern District of Ohio, sitting by designation.

---

## COUNSEL

**ARGUED:** Elaine A. Parson, RAYMOND & PROKOP, Southfield, Michigan, for Appellant. Benjamin Whitfield, Jr., WHITFIELD & ASSOCIATES, Detroit, Michigan, for Appellee. **ON BRIEF:** Elaine A. Parson, RAYMOND & PROKOP, Southfield, Michigan, for Appellant. Benjamin Whitfield, Jr., WHITFIELD & ASSOCIATES, Detroit, Michigan, for Appellee.

---

## OPINION

---

BECKWITH, District Judge. Defendant-Appellant Monumental Life Insurance Company appeals from the judgment of the district court finding that Plaintiff-Appellee Warren K. Harrison was entitled to accidental death benefits under a group life insurance policy covering the life of Wayne Harrison. Because we conclude that the evidence presented by Plaintiff at trial was sufficient to find that an exclusionary clause precluding coverage was not applicable, the judgment of the district court is **AFFIRMED**.

I.

On June 15, 1997, Defendant-Appellant Monumental Life Insurance Company ("Monumental") issued a certificate of insurance under a group life insurance policy covering the life of Plaintiff Warren K. Harrison's decedent, Wayne Harrison. The policy paid $50,000 to the beneficiary if, and only if, bodily injury was the cause of death of the insured: "The injury must be the direct cause of [death] and must be independent of all other causes. The injury must not be caused by or contributed to by Sickness." *See* Policy, J.A. at 101. In addition, the policy contained the following specific exclusion of coverage: "We will not pay a benefit for a loss which is caused by, results from, or contributed to by

. . .[s]ickness or its medical or surgical treatment, including diagnosis[.]" *Id.* at 102.

Wayne Harrison was age 60 at the time he obtained coverage under the policy but by then he had already experienced an extensive medical history. In 1990, Mr. Harrison was diagnosed with squamous cell carcinoma of the soft palate, which was treated with radiation and chemotherapy. J.A. at 355. In 1992, Mr. Harrison was admitted to the hospital for treatment of an intracranial hemorrhage after he was found lying in his basement. *Id.* at 426. In 1993 and 1994, Mr. Harrison received treatment for seizures. *Id.* at 419, 471. In 1995, Mr. Harrison was treated at the emergency room after being assaulted and struck in the head with a baseball bat. *Id.* at 1310. In 1996, Mr. Harrison was treated in the emergency room after being struck in the head by a metal plate at work. *Id.* at 289. Also in 1996, Mr. Harrison had a colonoscopy to remove a polyp. *Id.* at 504. In 1997, Mr. Harrison was again admitted to the hospital for a fractured vertebrae after being pushed down a flight of stairs. *Id.* at 646. In addition to these discrete incidents requiring medical attention, the record reflects that Mr. Harrison had a history of hypertension and alcoholism. Finally, either as part of his treatment for throat cancer or during a seizure, Mr. Harrison lost part of his tongue. This caused food to aspirate into his lungs, resulting in chronic aspiration pneumonitis, or aspiration pneumonia.

On January 12, 1998, Mr. Harrison was struck by a truck while crossing a street in Detroit. He was admitted to St. John's Hospital with multiple fractures of the pelvis, a fracture of the pubic bone, and comminuted fractures of the proximal ends of the right tibia and fibula. J.A. at 154. On January 13, 1998, Mr. Harrison was transferred to Henry Ford Hospital. While at Henry Ford, Mr. Harrison developed bilateral bronchial pneumonia and died on January 30, 1998. Dr. Suwait Kanluen, the chief medical examiner for Wayne County, Michigan, performed an autopsy on Mr. Harrison which concluded that death was caused by the fractures sustained in the collision. Dr. Kanluen listed bilateral

bronchial pneumonia as a complicating factor in Mr. Harrison's death. *Id.* at 157.

Following Mr. Harrison's death, Plaintiff filed a claim for benefits under the policy. Monumental, however, denied Plaintiff's claim on the grounds that the medical records demonstrated that the accident itself was not sufficient to cause Mr. Harrison's death and that his numerous preexisting conditions were a contributing cause of death. Thus, according to Monumental, Plaintiff's claim fell under the exclusionary clause which required bodily injury to be the sole cause of death.

Plaintiff originally filed suit against Monumental for breach of the policy in the Wayne County Circuit Court, but Monumental removed the case to the United States District Court for the Eastern District of Michigan on February 17, 1999. The basis for the district court's subject matter jurisdiction was diversity jurisdiction pursuant to 28 U.S.C. § 1332.[1]

The case proceeded to a trial before the bench on January 2 and January 3, 2001. Not surprisingly, given the nature of Mr. Harrison's medical history, the trial came down to the opinions of each side's medical expert. Dr. Kanluen, the Wayne County medical examiner, testified on behalf of Plaintiff. According to Dr. Kanluen:

---

[1]Plaintiff is a citizen of the state of Michigan. Monumental is a Maryland corporation with its principal place of business in Maryland. Thus, the diversity of citizenship requirement was satisfied. *See* J.A. at 12. Although the ultimate judgment in the case was for $50,000, the complaint pled damages of $100,000, apparently based on a theory that additional coverage was due under the policy. The district court ultimately ruled against Plaintiff on this claim and this decision is not before us on appeal. Nonetheless, the amount originally pled in the complaint controls the amount in controversy requirement. *See Jones v. Knox Exploration Corp.*, 2 F.3d 181, 182-83 (6th Cir. 1993). Therefore, the amount in controversy requirement was satisfied in this case as well.

After autopsy, it was my opinion that Mr. Harrison died of multiple injuries. That means, fracture of the pelvis, pelvis bone, fracture of the right leg bone, and he also has complications, bilateral pneumonia, and cause of death was multiple injuries complicated by pneumonia.

J.A. at 254. Dr. Kanluen further testified that knowing Mr. Harrison's medical history did not change his opinion that the accident was the cause of death. *Id.* at 260-61; 263-64. Dr. Kanluen admitted that he observed both acute and chronic pneumonia in Mr. Harrison's lung tissue. *See id.* at 262-63; 268-69.[2] Dr. Kanluen testified, however, that acute pneumonia, and not chronic pneumonia, was the contributing cause of death:

What I observed was acute pneumonia. Not talking about chronic. That pneumonia was because he was in the hospital for treatment, and the people who was in the hospital, of course, body resistance is low. That's why infection was very easy. That's why in my opinion bronchopneumonia is the complication of the injury, because he was hit by truck and in the hospital. His body was low, and that's why he got the pneumonia, and that was the complication of the injury that brought him there. If not for the truck or in the hospital, he doesn't have acute bronchopneumonia. That's my opinion.

*Id.* at 262-63. Dr. Kanluen further stated that Mr. Harrison could have lived with chronic pneumonia for "a long, long time." *Id.* at 269. Dr. Kanluen's testimony obviously created an important distinction because if chronic, i.e. preexisting, pneumonia contributed to Mr. Harrison's death, there would be no coverage under the policy.

---

[2] Acute pneumonia is characterized by rapid onset whereas chronic pneumonia persists over a long period of time. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 25, 351, 1414 (29th ed. 2000) (defining "acute," "chronic," and "acute pneumonia," respectively).

Monumental's expert, Dr. Werner Spitz, of course testified differently:

Q. Have you made a determination of the injuries Mr. Harrison sustained when struck by a vehicle at a crosswalk where [sic] the sole cause of his death meaning, did he die as a direct and independent result of injuries without the contribution of any sickness or disease?

A. No he did not. Let me please say in a full sentence, it is not my opinion that Mr. Harrison died solely of the injury. The injury in and of itself was not a fatal condition.

J.A. at 1608. Dr. Spitz testified that his examination of Mr. Harrison's lung tissue showed no signs of acute bronchopneumonia and that he saw only evidence of long-standing lung disease. *Id.* at 1610. Later, in attempting to apportion the cause of death, Dr. Spitz testified that the accident played only a two percent role in Mr. Harrison's death and that the remainder was attributable to his preexisting conditions. *Id.* at 1625.

On January 5, 2001, the district court issued a short written order making findings of fact and conclusions of law and containing its verdict. After reviewing some of the background facts and testimony, the district court stated:

The Court finds Dr. Kanluen's testimony credible. Wayne Harrison's injury and resulting death were not "contributed to" by preexisting sickness. Wayne Harrison died because he sustained severe injuries from being struck by a vehicle on January 12, 1998. Wayne Harrison died of injuries accidentally-sustained, which the insurance policy covers. Plaintiff, the beneficiary, is entitled to the benefits of that policy, in the amount of $50,000. The Court does not find credible the testimony of the defense expert, Dr. Werner Spitz. Dr. Spitz opined that a chronic infection was the 97% or 98% cause of Mr. Harrison's death–a man who was living on his own and

walking across the street when he struck by a truck that inflicted multiple severe injuries that cause his death. The Court finds this testimony not credible.

J.A. at 227. The district court then entered judgment in favor of the Plaintiff and awarded damages of $50,000.

Monumental now appeals from the judgment of the district court finding that Plaintiff was entitled to recover accidental death benefits under the circumstances of Mr. Harrison's death. Specifically, Monumental argues that the district court's finding that the accident was the sole cause of Mr. Harrison's death was clearly erroneous and/or lacked evidentiary support in the record and that the district court erroneously applied Michigan law relating to exclusionary clauses in accidental death policies.

## II.

Rule 52(a) of the Federal Rules of Civil Procedure describes the deference to be afforded a district court's findings of fact upon the conclusion of a bench trial: "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." The U.S. Supreme Court further explained this standard:

If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. This is so even when the district court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts.

. . .

When findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said. This is not to suggest that the trial judge may insulate his findings from review by denominating them credibility determinations, for factors other than demeanor and inflection go into the decision whether or not to believe a witness. Documents or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it. Where such factors are present, the court of appeals may well find clear error even in a finding purportedly based on a credibility determination. But when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.

*Anderson v. City of Bessemer City*, 470 U.S. 564, 573-75 (1985) (internal citations omitted). This Court has also stated that "the factual conclusions rendered by a district court sitting without a jury are binding on appeal unless this Court is left with a definite and firm conviction that a mistake has been made." *Thompson v. Nat'l R.R. Passenger Corp.*, 621 F.2d 814, 817-18 (6th Cir. 1980). The burden is on the appellant to prove such a mistake, *Godley v. Kentucky Res. Corp.*, 640 F.2d 831, 834 (6th Cir. 1981), and this burden is not met merely by demonstrating a conflict in the testimony, *Walling v. Gen. Indus. Corp.*, 330 U.S. 545, 549 (1947); *Godley*, *supra*, nor by seeking to redetermine the credibility of witnesses. *NLRB v. Nichols of Ohio, Inc.*, 472 F.2d 1228, 1229 (6th Cir. 1972). Moreover, the appellate court must review the facts in the light most favorable to the appellee. *Sawyer v. Arum*, 690 F.2d 590, 591-92 (6th Cir. 1982). Legal determinations made by the district court are not accorded the

same deference, and are reviewed de novo. *Owens-Illinois, Inc. v. Aetna Cas. & Sur. Co.*, 990 F.2d 865, 871 (6th Cir. 1993).

### III.

It is undisputed here that the insurance policy is governed by Michigan law. The plaintiff's burden of proving coverage under an accidental death policy depends on the language of the policy itself. Where the policy contains only a "sole clause,"[3] the claimant may recover, even where preexisting conditions combine with accidental injuries, if he shows that the accidental external injury was the efficient, dominate, and proximate cause of death of the insured. *Berger v. Travelers Ins. Co.*, 149 N.W.2d 441, 442 (Mich. 1967). If, however, the insurance policy contains an "exclusionary clause," which expressly negates coverage where a preexisting disease plays any part in the insured's death, the claimant must show that the accident itself was sufficient to cause death. *Id.*; *Scharmer v. Occidental Life Ins. Co.*, 84 N.W.2d 866, 870 (Mich. 1957); *see also Ann Arbor Trust Co. v. Canada Life Assurance Co.*, 810 F.2d 591, 593 (6th Cir. 1987).[4]

---

[3] A "sole clause" stipulates that death must be caused solely by bodily injury, directly and independently of all other causes of death. *E.g. Kangas v. New York Life Ins. Co.*, 193 N.W. 867, 868 (Mich. 1923).

[4] A few examples may suffice to show how we understand these two different clauses are correctly applied. A person with hemophilia is involved in a car accident and sustains a small cut which would not be fatal to another, but which caused this person to bleed to death because his blood would not clot. If this person was insured under an accidental death policy containing only a "sole clause," the claimant would prevail because the car accident was the proximate cause of the insured's death because it caused the cut which caused the insured to bleed to death. If, however, this same person was covered under an accidental death policy containing an "exclusionary clause," then the claimant would not prevail because, absent the hemophilia, the cut caused by the accident otherwise would not have been fatal. On the other hand, if a hemophiliac is, say, shot through the heart with a gun, he would be covered under a policy containing an "exclusionary clause," despite his hemophilia, because that injury would be sufficient alone to cause death to anyone. Finally, if a

It appears to be undisputed that the accidental death policy in this case contains an exclusionary clause, which would have required Plaintiff to prove that the accident itself was sufficient to cause Mr. Harrison's death. On appeal, Monumental's two assignments of error are interrelated. Monumental first argues that in finding for Plaintiff, the district court applied the less strenuous "but for" standard applicable to policies containing only "sole clauses" instead of the more rigorous standard applicable to policies with "exclusionary clauses." According to Monumental, not only was Plaintiff required to prove that the accident was itself sufficient to cause Mr. Harrison's death, he was also required to eliminate each of Mr. Harrison's various preexisting conditions as a contributing cause of death. Second, Monumental argues that the evidence was insufficient to support the verdict because all of the evidence, including the testimony of Plaintiff's expert Dr. Kanluen, showed that Mr. Harrison's preexisting conditions contributed to his death.

We note at the outset that in its verdict, findings of fact and conclusions of law, the district court did not state or indicate which standard it was applying in assessing the evidence presented. Nonetheless, in reaching its verdict, the district court did make a credibility judgment regarding the competing expert witnesses which dictated the outcome of the trial. Since we are not free to disregard the district court's credibility assessment, the verdict must stand if on review Dr. Kanluen's testimony supports a finding that the accident alone was sufficient to cause Mr. Harrison's death. Viewed in the light most favorable to Plaintiff, we believe there was sufficient evidence to support the district court's judgment.

It appears to us that Dr. Kanluen testified rather unequivocally that the injuries that Mr. Harrison suffered from being struck by the vehicle, coupled with the resulting

---

person without any preexisting conditions is involved in a car accident, and suffers injuries which cause him to bleed to death, then he obviously would be covered under both policies because the injuries from the accident were alone sufficient to cause death.

bronchopneumonia, were the sole cause of death. *See* J.A. at 262-63. Furthermore, even though Dr. Kanluen admitted the presence of chronic pneumonia in Mr. Harrison's lung tissue, he also testified that the chronic pneumonia was not a factor in the cause of death. *See id.* Though Monumental contends that both the district court and Dr. Kanluen applied a simple "but for" causation standard, it seems apparent to us that the only "but for" statement in Dr. Kanluen's testimony was that if Mr. Harrison had not been struck by the truck and placed in the hospital, he would not have contracted the acute bronchopneumonia which was identified as a complicating factor in the cause of death. In other words, the acute bronchopneumonia did not originate from any preexisting condition, but rather, according to Dr. Kanluen, developed because Mr. Harrison was confined in the hospital after the accident. Thus, the bronchopneumonia is attributable to the accident. Finally, although we are not sure that we agree with Monumental that Plaintiff was required to eliminate each of Mr. Harrison's preexisting conditions as a contributing cause of death in addition to demonstrating that the injuries from the accident were alone sufficient to cause death, we note that after being read a list of Mr. Harrison's existing illnesses and conditions, Dr. Kanluen testified that this information did not change his conclusion regarding the cause of death. *Id.* at 260-61; 263-64. Therefore, we think that Dr. Kanluen implicitly, if not explicitly, ruled out Mr. Harrison's preexisting conditions as factors contributing to his death. Thus, it appears to us that Dr. Kanluen's testimony satisfies the standard tendered by Monumental.

### Conclusion

In summary, the outcome of this lawsuit, as is the case with many lawsuits, turned on the testimony of each side's expert witness. The district court chose to credit the testimony of Plaintiff's expert witness and entered judgment in favor of the Plaintiff. Upon review of the record, we find under Michigan law that the evidence adduced at trial was sufficient to meet the standards for imposing liability under this accidental death

life insurance policy. Accordingly, the judgment of the district court is **AFFIRMED**.